**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ALBERT F. CATANACH JR.,

      Plaintiff,

    v.                            No. CIV-06-1115 LH/RHS

CITI CARDS/BANK

      Defendant.

**OPPOSITION OF DEFENDANT CITIBANK (SOUTH DAKOTA), N.A., ERRONEOUSLY IDENTIFIED AS "CITI CARDS/BANK", TO PLAINTIFF'S UNTIMELY MOTION FOR SUMMARY JUDGMENT**

Citibank (South Dakota), N.A., erroneously identified as "Citi Cards/Bank" ("Citibank"), hereby responds to and opposes the untimely Motion for Summary Judgment filed by plaintiff Albert F. Catanach, Jr. ("Plaintiff")

**I.    INTRODUCTION**

This action arises from a straightforward dispute between a merchant and a customer regarding the quality of items purchased. In January and March 2006, Plaintiff Albert F. Catanach Jr. ("Plaintiff") purchased certain used computers from a merchant doing business as DRMS-Government Liquidation ("DRMS") using a credit card account (the "Account") that he maintained with defendant Citibank (South Dakota), N.A. ("Citibank"). Plaintiff received and accepted the computers, but subsequently became dissatisfied with the purchases. Thereafter,

Plaintiff attempted to dispute the charges for the goods with Citibank, seeking relief from his obligation to pay for the charges on the Account.

In his Complaint, Plaintiff asserts a single claim against Citibank for a purported violation of the federal Fair Credit Billing Act, 15 U.S.C. § 1666 ("FCBA"), which is part of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"). Plaintiff maintains (albeit incorrectly) that Citibank supposedly failed to resolve Plaintiff's dispute within the time periods specified in the FCBA. As demonstrated in Citibank's pending Motion for Summary Judgment, this claim is fatally defective as a matter of law based on the undisputed facts. Furthermore, Plaintiff's untimely Motion for Summary Judgment should be denied based on the law and undisputed facts here.

*First*, Plaintiff's Motion for Summary Judgment is untimely because it was filed after the June 11, 2007 cutoff for the filing and service of pretrial motions, which was set by this Court's January 30, 2007 Scheduling Order. Accordingly, the Court need go no further in denying the Motion.

*Second*, Plaintiff's Motion should be denied because, as a procedural matter, Plaintiff already has taken the position that disputed issues of fact exist with respect to his claim. In opposing Citibank's Motion for Summary Judgment, Plaintiff referenced various purported "disputed material facts." Although Citibank maintains that this action may be decided on the undisputed facts cited by Citibank in its Motion for Summary Judgment, Plaintiff is estopped from seeking summary judgment on his claims here.

*Third*, Plaintiff does not, and cannot, allege and present evidence that the credit card transactions he is disputing primarily were made for consumer purposes, a threshold requirement in asserting a claim under TILA and the FCBA. To the contrary, the documents surrounding the transaction demonstrate that the unsatisfactory purchases involved commercial goods that were delivered to a business -- CNSP, Inc. -- and not Plaintiff.

*Fourth*, the facts confirm that Plaintiff's dispute was not a "billing error" governed by the FCBA. Rather, Plaintiff's dispute is directed at the quality of the computer products he accepted and received from the merchant, which type of dispute is excluded from the definition of "billing errors" under the FCBA.

*Fifth*, even if the FCBA applied here (which it does not), and Citibank had failed to comply with the FCBA's provisions regarding the timing of dispute resolution, Citibank is not required to forfeit the entire amount charged to the Account. Rather, the maximum amount required to be forfeited is $50.00. Because the undisputed facts establish that Citibank already has issued a $50.00 credit to Plaintiff's Account, Plaintiff is not entitled to any additional forfeiture, and his claim is defeated.

Accordingly, the Court should deny Plaintiff's Motion for Summary Judgment.

## II.   STATEMENT OF FACTS

1. On January 30, 2006, a charge in the amount of $5,074.34 for DRMS posted to Plaintiff's Account. (Declaration of Elizabeth S. Barnette ("Barnette Decl.", ¶ 3.) (Docket No. 14)

2. According to an Invoice provided by Plaintiff, the $5,074.34 charge was made for the purchase of computer goods from DRMS, located at 15051 N. Kierland Blvd., Third Floor, Scottsdale, Arizona 85254, by CNSP, Inc. ("CNSP"), located at 1308 Apache Ave., Santa Fe, New Mexico 87505. (*Id.* ¶ 3, Ex. A.) Contrary to Plaintiff's Undisputed Fact No. 1, there is no evidence supporting Plaintiff's statement that he purchased the computer goods for personal use and for the purpose of donating the computer goods to charity. Exhibit 1 to Plaintiff's Motion is merely a redacted copy of his credit card statement showing that the charge was posted to his Account.

3. On or about February 27, 2006, a charge in the amount of $4,053 for DRMS posted to Plaintiff's Account. (*Id.* ¶ 4.)

4. According to an Invoice provided by Plaintiff, the $4,053 charge also was made for the purchase of computer goods from DRMS, located in Scottsdale, Arizona, by CNSP, located in Santa Fe, New Mexico. (*Id.* ¶ 4, Ex. B.) Contrary to Plaintiff's Undisputed Fact No. 1, there is no evidence supporting Plaintiff's statement that he purchased the computer goods for personal use and for the purpose of donating the computer goods to charity. Exhibit 1 to Plaintiff's Motion is merely a redacted copy of his credit card statement showing that the charge was posted to his Account.

5. Both DRMS Invoices state, under the provision entitled "Conditions of Sale" that "[t]he purchaser acknowledges that each article purchased was examined and inspected prior to purchase or that the buyer has waived the opportunity to inspect the property." (*See id.* Exs. A and B.) These express terms regarding examination and inspection render Plaintiff's statement in Undisputed Fact No. 3 moot.

6. On or about March 27, 2006, Plaintiff sent correspondence to Citibank to attempt to dispute the $4,053 charge. (Barnette Decl., ¶ 5) Accompanying his correspondence, Plaintiff provided email correspondence allegedly sent to DRMS in which he describes his problem with the quality of the computer goods:

> We purchased these items (computers) under the impression that hard drives were the only items missing from the computers … My complaint is that our technicians are reporting that at least half of the computers do not have any ram installed in the computer. … I would like to note that the description says that the only item missing is the hard drive, so these items are not what the description says they are! ….

(*Id.* Ex. C (p.3).) The email is signed "Albert Catanach, CNSP, Inc." (*Id.*) Plaintiff fails to produce any evidence substantiating his statement in Undisputed Fact No. 4 that some of the computer goods he purchased were missing from the shipment he received. In addition, Plaintiff's statement in Paragraph 9 that he has not materially participated in CNSP since 1996 is refuted by his email signature and the Invoices for the computer goods. (*See* Barnette Decl., Exs. A, B, E and F.)

4

7. On or about March 27, 2006, Plaintiff also sent correspondence to Citibank in an effort to dispute $1,820 of the $5,074.34 DRMS charge. (Barnette Decl., ¶ 6.) Plaintiff confirmed in writing that he was only disputing $1,820 of the $5,074.34 DRMS charge. (*Id.* Ex. D.)

8. In April 2006, Citibank processed chargebacks for the two charges. (Barnette Decl., ¶ 8.) DRSM responded and refused to issue a credit. (Barnette Decl., ¶ 7, Exs. E and F.)

9. Plaintiff alleges that after both shipments of goods were accepted, he unsuccessfully attempted to return "many of the products" to DRMS -- documents provided by Plaintiff confirm that CNSP (not Plaintiff) attempted to return items to DRMS on or about June 28, 2006 -- six months after the charges had posted to the Account. (Barnette Decl., ¶ 8, Ex. G; *see* Complaint ¶¶ 4, 5, 6(a).) Accordingly, the statements in Undisputed Fact Nos. 5, 6 and 7 are incomplete.

10. On or about September 16, 2006, Citibank credited Plaintiff's Account the amount of $50.00 due to the amount of time that was required to resolve his inquiry. (*See* Barnette Decl., ¶ 9, Ex. H.) Plaintiff offers no evidence or statements to dispute these facts.

### III. ARGUMENT

**A.    Legal Standard On Summary Judgment**

Summary judgment is appropriate where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Quaker State Minit-Lube*, *Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed.R.Civ.P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). "Initially, the moving party bears the burden of showing that no genuine issue of material fact exists." *Pacific Indem. Co. v. Therm-O-Disc*, *Inc.*, 476 F. Supp. 2d 1216, 1223 (D.N.M. 2006)

(citing *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993)).  Applying these standards here, Plaintiff's Motion for Summary Judgment should be denied.

**B.     Plaintiff's Motion For Summary Judgment Is Untimely.**

On January 30, 2007, this Court entered a Scheduling Order in this action, which set June 11, 2007 as the filing and service deadline for all pretrial motions.  (*See* Docket No. 8., at p. 1.)  The Scheduling Order instructs that case management deadlines shall not be modified, "except by an order of the Court upon a showing of good cause."  Furthermore, the Scheduling Order states that "[a]ny pretrial motions, other than discovery motions, filed after the above dates shall, in the discretion of the Court, be considered untimely."  (*Id.* at 2.)

Plaintiff filed his Motion for Summary Judgment on June 18, 2007, after the June 11, 2007 deadline.  Plaintiff's sole reason for this late filing is that  "Plaintiff was unaware of the deadline of June 11, 2007 and did not receive anything in writing from the court stating the pre-trial deadline."  *See* Plaintiff's Motion for Extension of Time, at 1.  Plaintiff's stated reason, however, plainly is contradicted by the express terms of the written Scheduling Order.  Accordingly, because Plaintiff's Motion for Summary Judgment is untimely, it should be denied.

**C.     Plaintiff Is Estopped From Arguing That No Disputed Genuine Issues Of Fact Exist Based On His Opposition To Citibank's Pending Motion For Summary Judgment.**

In opposing Citibank's timely-filed Motion for Summary Judgment, Plaintiff already has taken the position that that disputed material facts exist with respect to Plaintiff's claims.  (*See* Plaintiff's Reply to Citibank's Motion for Summary Judgment, Docket No. 18, at 1-4).  Indeed, Plaintiff expressly asserts in his Reply:  "Plaintiff prays that Defendant's Motion for Summary Judgment be denied because of disputes of material facts and because it is not supported by law or equity."  [*Id.* at 4.]  Although Citibank maintains that there are no genuine disputed factual issues and that summary judgment should be entered in Citibank's favor, Plaintiff is estopped from claiming that no disputed issues of fact exist that would warrant entry of summary

judgment in Plaintiff's favor. Accordingly, Citibank respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment because Plaintiff has taken the position that disputed issues of fact exist with respect to his claim.

**D.     The FCBA Does Not Apply To The DRMS Charges Because The Documents Reflecting The Purchases At Issue Reflect That Such Charges Were Made For Commercial Purposes.**

The FCBA, which is set forth in TILA (15 U.S.C. § 1666) and its implementing Regulation Z ("Reg. Z") (12 C.F.R. § 226.13),[1] gives a consumer with a credit card a very specific right to require a credit card issuer to investigate and resolve certain types of alleged "billing errors" for consumer transactions that appear on monthly billing statements. 15 U.S.C. § 1666; 12 C.F.R. § 226.13. If these billing error rules apply, the creditor is required to acknowledge receipt of the consumer's billing error notice, as well as investigate and respond to the notice, within specific time periods -- within two complete billing cycles and not less than 90 days. 15 U.S.C. § 1666(a). A creditor who fails to comply with the FCBA's requirements forfeits the right to collect the disputed amount, plus any finance charges; *provided*, however, the required amount to be forfeited "may not exceed $50." 15 U.S.C. § 1666(e).

Because the FCBA is part of TILA, it does not apply to "credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes …." 15 U.S.C. § 1603(1). Rather, the FCBA's protections are restricted to transactions made for "consumer credit" purposes. *See American Express Co. v. Koerner*, 452 U.S. 233, 242, 101 S. Ct. 2281, 68 L. Ed. 2d 803 (1981) (concluding that no "extension of consumer credit" occurred in case involving FCBA claim "because none of the credit transactions relevant to the billing dispute

---

[1] Reg. Z, which implements TILA, including the FCBA, 12 C.F.R. Pt. 226, and its Official Staff Commentary, 12 C.F.R. Pt. 226, Supp. I (the "Commentary"), are binding on courts unless "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 557, 565 (1980); *see also Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 242-45 (2004).

was entered into 'primarily' for consumer purposes"); *see* 12 C.F.R. § 226.2(a)(12) ("Consumer credit means credit offered or extended to a consumer primarily for personal, family or household purposes."). Indeed, "[t]wo elements thus must be present in every 'consumer credit' transaction: the party to whom the credit is extended must be a natural person, and the money, property, or services received by that person must be 'primarily for personal, family, household, or agricultural purposes.'" *American Express Co. v. Koerner*, 452 U.S. at 242 (citations omitted).

      Here, Plaintiff does not allege in his Complaint that the computer purchases he disputed were primarily made for consumer purposes. Nor can he because the documents provided by Plaintiff confirm that the computer goods were sold to CNSP for commercial purposes. (*See* Barnette Decl., Exs. A, B, C.) Indeed, in describing his problem with the computer goods, Plaintiff stated that "our technicians are reporting that at least half of the computers do not have any ram installed in the computer." (*Id.* Ex. C (p.3).) Clearly, based on Plaintiff's own documents, the transactions at issue primarily were made for a commercial purpose, and not consumer purpose. As a result, Plaintiff's singular claim under the FCBA fails as a matter of law.

      In his Motion, Plaintiff maintains that he "personally" purchased the computers "for personal use and for the purpose of refurbishing and donating to local Non-Profit agencies in the area specifically two schools." Motion, at 2. Plaintiff, however, presents no evidence that supports this unsubstantiated statement. Although Plaintiff submitted an Affidavit in support of the Motion (Exhibit 3 to the Motion), Plaintiff does not attest to any personal use of such computers therein. Plaintiff also has redacted the other charges on his credit card Account statement, precluding the Court from reviewing how the Account at issue was utilized. Moreover, even if Plaintiff intended on donating the computers to a local school, which is not mentioned in the Affidavit, nor alleged in the Complaint, such use would not be for a consumer

8

purpose under the FCBA and TILA.  *See* 12 C.F.R. § 226.2(a)(12) ("Consumer credit means credit offered or extended to a consumer primarily for personal, family or household purposes."). Simply put, Plaintiff's conclusory statements in the Motion are nothing more than unsubstantiated argument, and do not support his claim for purposes of summary judgment. Accordingly, Plaintiff's Motion should be denied.

**E.     Plaintiff's "Dispute" Does Not, And Cannot, Constitute A "Billing Error" Governed By The FCBA.**

A cardholder may invoke the FCBA's procedures only where the cardholder identifies a "billing error," as defined in the FCBA and Reg. Z.  *See*, *e.g.*, *Pinner v. Schmidt*, 805 F.2d 1258, 1264 (5th Cir. 1986) (dismissing FCBA claim because plaintiff did not comply with the prerequisites for invoking the billing-error procedures); *Beaumont v. Citibank* (*South Dakota*), *N.A.*, No. 01 Civ. 3393 (DLC), 2002 U.S. Dist. LEXIS 5276, *11 (S.D.N.Y. Mar. 28, 2002) (claim dismissed where plaintiff failed to allege a billing error as defined by the FCBA and Regulation Z).  Critically here, a "billing error" does not constitute "a dispute relating to the quality of property or services that the consumer accepts."  12 C.F.R. § 226, Supp. I, com. 13(a)(3)-1.  Indeed, as noted by one court, "'a dispute relating to the quality of property or services that the consumer accepts' is expressly excluded from the definition of a 'billing error.'" *Greisz v. Household Bank* (*Illinois*), 8 F. Supp. 2d 1031, 1042 (N.D. Ill. 1998) (dismissing FCBA claims where consumer's billing error notice challenged only merchant's "unsatisfactory service").

Here, in describing the problem with the used computer products that were purchased and accepted by CNSP,[2] Plaintiff has claimed that some of the products did not have any RAM

---

[2] Plaintiff's receipt and retention of the allegedly defective goods constituted an acceptance under New Mexico law.  *See Celebrity*, *Inc. v. Kemper*, 96 N.M. 508, 509-10, 632 P.2d 743 (N.M. 1981) (concluding that purchaser failed to provide seller seasonable notice of rejection of shipment of defective goods, reasoning, "the law does not permit an indefinite period for inspection" and that purchaser "had the opportunity to reject the entire shipment when he learned

memory and were damaged.  (*See* Barnette Decl., Ex. C.)  Therefore, because Plaintiff complains about the quality of the computers, his dispute does not constitute a valid "billing error" governed by the FCBA.  The simple facts are that CNSP purchased goods from DRMS, charged the purchase to Plaintiff's Account, received delivery of the goods and accepted the goods, but became dissatisfied with his purchase and sought to unwind it.  The FCBA does not govern cardholder disputes concerning the quality or condition of the goods received.

In attempting to salvage his claim, Plaintiff cites to the provisions of 15 U.S.C. § 1666i to establish that he is entitled to a credit to his Account for the entire amount of the computer goods purchased.  *See* Motion, at 2.  Section 1666i of TILA authorizes a cardholder who possesses a valid non-tort claim or defense against a merchant the right to chargeback certain outstanding payments by withholding payment.  *See Moynihan v. Providian Fin'l Corp.*, 2003 WL 21841719, * 2 (D. Md. Jul. 14, 2003); *Beaumont v. Citibank* (*South Dakota*) *N.A.*, 2002 WL 483431 (S.D.N.Y. Mar. 28, 2002); *see also* 12 C.F.R. § 226.12(c).  "Section 1666i, however, 'does not create an independent cause of action for a cardholder.'"  *Moynihan*, 2003 WL 21841719, * 2 (quoting *Beaumont*, 2002 WL 483431, * 6). "Rather, § 1666i only allows a cardholder to assert claims and defenses against a card issuer in three instances: (1) as a justification for withholding payment; (2) in any lawsuit filed by the card issuer to collect on the account; or (3), if appropriate, in connection with a lawsuit brought by the cardholder for a violation of TILA."  *Moynihan*, 2003 WL 21841719, * 2 (citing *Beaumont*, 2002 WL 483431, * 5-6).

Critically here, Section 1666i does *not* apply where the disputed item(s) is purchased more than 100 miles from the Claimant's address.  *See* 15 U.S.C. § 1666i(a); *Moynihan*, 2003

---

upon receipt that some of the items were defective"); *Oda Nursery, Inc. v. Garcia Tree & Lawn, Inc.*, 103 N.M. 438, 441-42, 708 P.2d 1039 9 (N.M. 1985) (retention of goods for four months defeated purchaser's ability to revoke acceptance).

10

WL 21841719, * 2.  Here, based on the Invoices reflecting the transactions, the computers were purchased by CNSP, located in Santa Fe, New Mexico, from DRMS, located in Scottsdale, Arizona.  (Barnette Decl., Exs. A, B, C, E and F.)  In addition, the address for Plaintiff's Account on his billing statement is in Santa Fe, New Mexico.  (Motion, Ex. 1.)  Accordingly, because the purchase occurred more than 100 miles from Plaintiff's address in New Mexico, Section 1666i simply has no application here.

Moreover, the fact is that Plaintiff's Complaint does not reference any claim brought pursuant to 15 U.S.C. § 1666i.  Plaintiff cannot seek summary judgment on a claim that was never raised in the Complaint.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-92 (9th Cir. 2000) (concluding that plaintiffs could not move for summary judgment on theory that was not pled in their complaint); *Crest A Apartments Ltd. II v. United States*, 52 Fed. Cl. 607, 613 (Fed. Cl. 2002) (court refused to consider claims asserted by plaintiff in its motion for summary judgment but not pled in plaintiff's complaint); *Lawmaster v. Ward*, 125 F.3d 1341, 346 n.2 (10th Cir. 1997) (refusing to consider plaintiff's claim not raised in complaint).*Orr v. City Of Albuquerque*, 417 F.3d 1144, 1152-53 (10th Cir 2005) (affirming New Mexico District Court's refusal to consider plaintiffs' new claim raised for first time in response to summary judgment); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) (plaintiffs may not "wait until the last minute to ascertain and refine the theories on which they intend to build their case.... This practice, if tolerated, 'would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances"); *Green Country Food Market*, *Inc. v. Bottling Group*, *LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004) (affirming summary judgment where plaintiff did not plead claim in complaint and did not raise issue until response to summary judgment).

The same holds true with respect to Plaintiff's unsubstantiated argument that Citibank somehow furnished inaccurate credit information regarding the Account in violation of 15 U.S.C. § 1666a(b). (*See* Motion, at 5.) No such allegations are pled in the Complaint and, therefore, cannot support a Motion for Summary Judgment. Indeed, Plaintiff fails to produce any admissible evidence supporting his claim that Citibank somehow furnished inaccurate information regarding his Account. The portion of a credit report supposedly relating to Plaintiff (Motion, Ex. 9) is inadmissible here because it has not been properly authenticated nor has any foundation been laid for its admission.

The end result here is that Plaintiff fails to present undisputed facts, supported by admissible evidence, that satisfy his burden to prove liability on his singular claim for violation of the FCBA. Accordingly, the Motion should be denied.

**F.     Even If The FCBA Applies (Which It Does Not), The FCBA Only Authorizes A Maximum Forfeiture Of $50.00, Which Citibank Has Already Provided.**

As set forth in the Complaint, Plaintiff's only claim for relief here is that, because Citibank allegedly did not resolve his dispute within the specified time period under 15 U.S.C. § 1666(a)(3)(B), Citibank is obligated to forfeit its right to collect on all of the disputed charges. Plaintiff is incorrect. As noted above, the FCBA expressly states that the of potential forfeiture "may not exceed $50." 15 U.S.C. § 1666(e); *see Koerner*, 452 U.S. at 237 (recognizing, "A creditor that fails to comply with [15 U.S.C. § 1666(e)] forfeits its right to collect the first $50 of the disputed amount including finance charges"); *Gray v. American Exp. Co.*, 743 F.2d 10, 14 (D.C. Cir. 1984) (same).

Even assuming that Plaintiff's allegations are true, the total amount of potential forfeiture here would be $50. The undisputed facts establish, however, that Citibank already provided a $50 credit to Plaintiff's Account in September 1996. (*See* Barnette Decl., Ex. G.) Therefore,

Plaintiff's claim here is moot, and he remains liable for the outstanding balance of the DRMS charges. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Citibank respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment in its entirety.

Dated:  July 11, 2007                               Respectfully submitted,

**HOLLAND & HART LLP**


By:    */s/ Kristina Martinez*
             Kristina Martinez
             Post Office Box 2208
             Santa Fe, New Mexico  87504-2208
             505.988.4421

**Attorneys for Defendant
CITIBANK (SOUTH DAKOTA), N.A.,
ERRONEOUSLY SUED AS CITI
CARDS/BANK**

**CERTIFICATE OF SERVICE**

 I certify that on this 11th day of July, 2007, I served a copy of the foregoing document to the following by:

☒ U.S. Mail, postage prepaid
☐ Hand Delivery
☒ Electronic Service via Court's CM/ECF System

Albert F. Catanach, Jr., *pro se*
103 W. Barcelona
Santa Fe, New Mexico 87505

       */s/ Kristina Martinez*

3735917_1.DOC